UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN FIRST CREDIT UNION,   No. 05-74423

       Plaintiff,   District Judge George Caram Steeh

v.   Magistrate Judge R Steven Whalen

CUMIS INSURANCE SOCIETY, INC.

       Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

Before the Court is Plaintiff's Motion to Compel Production of Documents [Doc. #27]. Oral argument on this Motion was conducted on May 23, 2006, at which time Defendant submitted a number of documents for *in camera* review with regard to the issues of attorney-client and work product privilege.

There are two general sets of documents/communications at issue. The first involves communications between Dave Lynett and Mike Retelle, both non-attorney employees of Defendant Cumis who worked on Plaintiff's claim. The second involves communications to and from Michael Weber, a claim investigator who also happens to be an attorney.

By way of factual background, Plaintiff's initial claim was denied in November of 2004. However, this was not a final denial, and additional investigation of the claim, including further evidence and documentation provided by Plaintiff, took place for the remainder of 2004 through November of 2005, when Cumis issued its final denial.

Defendant argues that after the initial denial November, 2004, all communications in issue were done in preparation of litigation, and thus privileged. Plaintiff, on the other hand, argues that since there was an open investigation between November of 2004 and November of 2005, any communications in furtherance of that investigation were made in the ordinary course of business, and therefore are not privileged.

### **The Lynette and Retelle Documents**

Defendant asserts work product privilege as to communications between Lynette and Retelle, because they were generated in anticipation of litigation. To meet that standard, it must be shown that the documents were prepared "because of a real possibility of litigation, not for ordinary business purposes." *In re Om Group Securities Litigation*, 226 F.R.D. 579, 584 (6th Cir. 2005). A review of the documents that have been submitted *in camera* convinces this Court that even after the initial claim denial in November of 2004, through the time of the final denial in November of 2005, this was an open investigation that might well have gone in Plaintiff's favor. The documents generated during that time were made for ordinary business purposes, that is, to investigate and resolve a claim. While litigation is always a possibility, it was not a *real* possibility, within the meaning of *Om Group*, until the time of the final denial in November, 2005. (This Court made a similar finding with regard to its order denying Defendant's motion to quash the Doeren-Mahew documents, *see* Doc. #23).

There is often tension between the assertion of the work product privilege and the broad scope of discovery envisioned by the Federal Rules, and the courts must carefully

scrutinize such claims of privilege, especially in the context of insurance cases. As the court stated in *Allendale Mutual Insurance v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992):

> "The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially true in the insurance context, where insurers routinely perform investigations and accumulate files even when no litigation ensues. In this court's experience with such cases, the work product doctrine becomes an all-encompassing shroud of secrecy that is at once at odds with the federal rules' liberal discovery policy and the protection of attorney's though processes and strategies the doctrine is designed to be. Rather than using the doctrine to immunize these strategies and opinions from discovery, some discovery opponents seem to use the doctrine to relieve themselves of the burden of producing factual information accumulated in what appears to be routine investigations."

Accordingly, Plaintiff is entitled to discovery of communications between Lynette and Retelle, involving this claim.

## **The Weber Documents**

Aside from work product privilege, Defendant also claims attorney-client privilege as to communications involving Michael Weber, an attorney who also acted as a claims investigator.

In *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1999), *cert. denied*, 525 U.S. 820 (1998), the court described the attorney-client privilege as follows: "(1) where legal advice of any kind is sought (2) from a professional legal adviser *in his capacity as such*, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8)

unless the protection is waived." (Emphasis added). The attorney-client privilege is narrowly construed, because it "reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996). Furthermore, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir. 1999). Where a person who happens to be an attorney is not acting in that capacity, the privilege does not attach. *Neuberger Newman Real Estate Income Fund Inc. v. Lola*, 230 F.R.D. 398, 422 (D.Md. 2005). Communications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege. *Coleman v. American Broadcasting Corp., Inc.*, 106 F.R.D. 201, 205 (D.D.C. 1985).

As discussed above, and as reflected in this Court's previous order regarding the Doeren-Mahew documents, there was an open investigation, done in the ordinary course of business, between November of 2004 and November of 2005. During that time, Weber acted not in the capacity of an attorney preparing for litigation (or giving legal advice), but as an investigator working with Lynette and Retelle, claims adjusters. The *in camera* review of the Weber documents shows that this was an ongoing, open investigation into a claim. Indeed, one of the Weber documents (Bates No. W0009) is dated May 17, 2004, well before even the initial denial of the claim. To protect Weber's pre-November, 2005 communications from disclosure would give too broad a scope to the attorney-client privilege, and in a larger sense would permit an insurer to construct a "shroud of secrecy"

by simply designating an attorney to conduct an otherwise ordinary claim investigation. *Allendale, supra*. The communications involving Michael Weber contained in the Defendant's privilege log are not protected by either attorney-client or work product privilege, and Plaintiff is entitled to discovery of those documents.

## Conclusion

The Court having read the pleadings and heard the argument of counsel, and having reviewed the disputed documents *in camera*,

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Production of Documents [Docket #27] is GRANTED

<pre>
                              S/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE
</pre>

Dated:  July 5, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 5, 2006.

<pre>
                              S/Gina Wilson
                              Case Manager
</pre>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN FIRST CREDIT UNION,       No. 05-74423

    Plaintiff,       District Judge George Caram Steeh

v.       Magistrate Judge R Steven Whalen

CUMIS INSURANCE SOCIETY, INC.

    Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

Before the Court is Plaintiff's Motion to Compel Production of Documents [Doc. #27]. Oral argument on this Motion was conducted on May 23, 2006, at which time Defendant submitted a number of documents for *in camera* review with regard to the issues of attorney-client and work product privilege.

There are two general sets of documents/communications at issue. The first involves communications between Dave Lynett and Mike Retelle, both non-attorney employees of Defendant Cumis who worked on Plaintiff's claim. The second involves communications to and from Michael Weber, a claim investigator who also happens to be an attorney.

By way of factual background, Plaintiff's initial claim was denied in November of 2004. However, this was not a final denial, and additional investigation of the claim, including further evidence and documentation provided by Plaintiff, took place for the remainder of 2004 through November of 2005, when Cumis issued its final denial.

Defendant argues that after the initial denial November, 2004, all communications in issue were done in preparation of litigation, and thus privileged. Plaintiff, on the other hand, argues that since there was an open investigation between November of 2004 and November of 2005, any communications in furtherance of that investigation were made in the ordinary course of business, and therefore are not privileged.

### **The Lynette and Retelle Documents**

Defendant asserts work product privilege as to communications between Lynette and Retelle, because they were generated in anticipation of litigation. To meet that standard, it must be shown that the documents were prepared "because of a real possibility of litigation, not for ordinary business purposes." *In re Om Group Securities Litigation*, 226 F.R.D. 579, 584 (6th Cir. 2005). A review of the documents that have been submitted *in camera* convinces this Court that even after the initial claim denial in November of 2004, through the time of the final denial in November of 2005, this was an open investigation that might well have gone in Plaintiff's favor. The documents generated during that time were made for ordinary business purposes, that is, to investigate and resolve a claim. While litigation is always a possibility, it was not a *real* possibility, within the meaning of *Om Group*, until the time of the final denial in November, 2005. (This Court made a similar finding with regard to its order denying Defendant's motion to quash the Doeren-Mahew documents, *see* Doc. #23).

There is often tension between the assertion of the work product privilege and the broad scope of discovery envisioned by the Federal Rules, and the courts must carefully

-2-

scrutinize such claims of privilege, especially in the context of insurance cases. As the court stated in *Allendale Mutual Insurance v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992):

> "The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially true in the insurance context, where insurers routinely perform investigations and accumulate files even when no litigation ensues. In this court's experience with such cases, the work product doctrine becomes an all-encompassing shroud of secrecy that is at once at odds with the federal rules' liberal discovery policy and the protection of attorney's though processes and strategies the doctrine is designed to be. Rather than using the doctrine to immunize these strategies and opinions from discovery, some discovery opponents seem to use the doctrine to relieve themselves of the burden of producing factual information accumulated in what appears to be routine investigations."

Accordingly, Plaintiff is entitled to discovery of communications between Lynette and Retelle, involving this claim.

### **The Weber Documents**

Aside from work product privilege, Defendant also claims attorney-client privilege as to communications involving Michael Weber, an attorney who also acted as a claims investigator.

In *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1999), *cert. denied*, 525 U.S. 820 (1998), the court described the attorney-client privilege as follows: "(1) where legal advice of any kind is sought (2) from a professional legal adviser *in his capacity as such*, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8)

unless the protection is waived." (Emphasis added). The attorney-client privilege is narrowly construed, because it "reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996). Furthermore, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir. 1999). Where a person who happens to be an attorney is not acting in that capacity, the privilege does not attach. *Neuberger Newman Real Estate Income Fund Inc. v. Lola*, 230 F.R.D. 398, 422 (D.Md. 2005). Communications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege. *Coleman v. American Broadcasting Corp., Inc.*, 106 F.R.D. 201, 205 (D.D.C. 1985).

As discussed above, and as reflected in this Court's previous order regarding the Doeren-Mahew documents, there was an open investigation, done in the ordinary course of business, between November of 2004 and November of 2005. During that time, Weber acted not in the capacity of an attorney preparing for litigation (or giving legal advice), but as an investigator working with Lynette and Retelle, claims adjusters. The *in camera* review of the Weber documents shows that this was an ongoing, open investigation into a claim. Indeed, one of the Weber documents (Bates No. W0009) is dated May 17, 2004, well before even the initial denial of the claim. To protect Weber's pre-November, 2005 communications from disclosure would give too broad a scope to the attorney-client privilege, and in a larger sense would permit an insurer to construct a "shroud of secrecy"

by simply designating an attorney to conduct an otherwise ordinary claim investigation. *Allendale, supra.* The communications involving Michael Weber contained in the Defendant's privilege log are not protected by either attorney-client or work product privilege, and Plaintiff is entitled to discovery of those documents.

## **Conclusion**

The Court having read the pleadings and heard the argument of counsel, and having reviewed the disputed documents *in camera*,

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Production of Documents [Docket #27] is GRANTED

                                               S/R. Steven Whalen
                                               R. STEVEN WHALEN
                                               UNITED STATES MAGISTRATE JUDGE

Dated: July 5, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 5, 2006.

                                               S/Gina Wilson
                                               Case Manager