UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN FIRST CREDIT UNION,   No. 05-74423

        Plaintiff,   District Judge George Caram Steeh

v.   Magistrate Judge R Steven Whalen

CUMIS INSURANCE SOCIETY, INC.

        Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S MOTION FOR SANCTIONS [DOCKET #162]

Before the Court is Plaintiff's Motion for Sanctions [Docket #162], which was argued on August 14, 2007. In large part, the motion deals with documents as to which the Defendant has claimed privilege. On August 21, 2007, the Court took the motion under advisement, ordering as follows:

> "Plaintiff's Motion for Sanctions [Docket #162] is TAKEN UNDER ADVISEMENT, pending *in camera* review of documents to which Defendant claims attorney-client/work product privilege. However, given Defendant's dilatory actions in providing even the non-privileged documents, thereby necessitating the filing of this Motion, Plaintiff will be awarded reasonable costs and attorney fees associated with pursuing this Motion. Plaintiff shall submit a bill of costs to this Court."

Plaintiff has submitted its bill of costs. Defendant has submitted a large box of documents for *in camera* review.

-1-

# I. BACKGROUND

Some history is in order. On July 5, 2006, the Court granted Plaintiff's motion to compel documents regarding the denial of Plaintiff Michigan First's claim to Defendant Cumis. The first set of documents involved communications between two non-attorney Cumis employees who worked on Plaintiff's claim. Following an *in camera* review, the Court rejected Defendant's claim of work product privilege because the documents were not generated in anticipation of litigation. Citing *In re Om Group Securities Litigation*, 226 F.R.D. 579, 584 (6th Cir. 2005), the Court stated:

> "A review of the documents that have been submitted *in camera* convinces this Court that even after the initial claim denial in November of 2004, through the time of the final denial in November of 2005, this was an open investigation that might well have gone in Plaintiff's favor. The documents generated during that time were made for ordinary business purposes, that is, to investigate and resolve a claim. While litigation is always a possibility, it was not a *real* possibility, within the meaning of *Om Group*, until the time of the final denial in November, 2005."

The second set of documents pertained to communications involving Michael Weber, an attorney who acted as a claims investigator for Cumis, with regard to the Michigan First claim. Defendant claimed attorney-client privilege as to these documents. Again following an *in camera* review, and applying the test of *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1999), *cert. denied*, 525 U.S. 820 (1998), the Court rejected the claim of privilege, finding that Weber was not acting in the capacity of an attorney:

> "[T]here was an open investigation, done in the ordinary course of business, between November of 2004 and November of 2005. During that time, Weber acted not in the capacity of an attorney preparing for litigation (or giving legal advice), but as an investigator working with Lynette and Retelle, claims

adjusters. The *in camera* review of the Weber documents shows that this was an ongoing, open investigation into a claim. Indeed, one of the Weber documents (Bates No. W0009) is dated May 17, 2004, well before even the initial denial of the claim. To protect Weber's pre-November 2005 communications from disclosure would give too broad a scope to the attorney-client privilege, and in a larger sense would permit an insurer to construct a "shroud of secrecy" by simply designating an attorney to conduct an otherwise ordinary claim investigation....The communications involving Michael Weber contained in the Defendant's privilege log are not protected by either attorney-client or work product privilege, and Plaintiff is entitled to discovery of those documents."

Plaintiff also sought discovery of Cumis' files regarding claims other than Michigan First's, "from 2000 to present for breach of faithful performance arising out of lending or indirect lending activity...." Defendant again claimed work product and attorney client privilege. On May 2, 2007, the Court heard oral argument on Plaintiff's motion to compel. At the hearing, the Court expressed its view that, at least presumptively, if there was a pre-final denial investigation of one of these other claims, "that would indicate or at least would seem to that it's not protected by attorney-client privilege [for the] same reasons that I've indicated in my previous ruling." (Tr. 5-2-07, 3). However, both on the record and in a written order filed on May 4, 2007, the Court directed the Defendant to file an amended privilege log.

Defendant filed its privilege log, resulting in the present motion for sanctions. On August 21, 2007, the Court ordered Defendant to submit the documents for *in camera* review. The Court has now undertaken an exhaustive review of the voluminous documents, and finds that as to most, but not all, the Defendant's claim of privilege is well-founded. The privilege log is organized in 20 discrete categories (including sub-categories). I note that

some documents are duplicated in more than one category, and some documents listed in the privilege log are not included, making the *in camera* review somewhat more burdensome, given the extremely large number of documents. Nevertheless, rather than re-organizing this mass of material, I will follow the categories as set forth by the Defendant, along with the relevant Bates numbers.

## II. OTHER CLAIMS FILES

Table 1-A: Attorney-Client Communication (starting with Bates no. CL04773)

Unlike the Michael Weber material, these documents involve attorneys acting in their capacity as such, under the *Reed v. Baxter* formulation. These documents are privileged, and are protected from discovery.

Table 1-B: Attorney-Client Communication (starting with Bates no. CL05325)

These are opinion letters, containing pure legal advice, and are protected by attorney-client privilege.

Table 1-B: Attorney-Client Communication (starting with Bates no. CL 08462)

Pure legal advice, protected by attorney-client privilege.

Table 1-C: Attorney-Client Communication (starting with Bates no. CL46652)

These documents contain both facts and legal advice from an outside law firm retained to defend Cumis. Unlike Michael Weber, whose role was purely investigatory, this law firm acted in the role as both investigator and attorney.

1. Pre-denial investigative reports

Bates nos. 25121-25132, 25135-25144, 14465-14472, 04448-04457, 04469-04471,

16334-16344, 16383-16385. These are pre-denial communications. The *facts* contained in these documents are discoverable, and Defendant shall produce the documents to Plaintiff. However, Defendant may redact legal advice and opinions.

2. Post-Reservation of Rights

This material (all Bates nos. except those listed in ¶ 1, above) is protected by both attorney-client and work product privilege, and is not discoverable.

Table 1-D: Attorney-Client Communication (starting with Bates no. CL05327)

CL 11355-11361 is purely factual material, and hence is not protected by privilege. Defendant shall produce these documents to Plaintiff.

The rest of the material in this category is protected by attorney-client and/or work product privilege.[1]

Table 1-E: Work Product (Subrogation) (starting with Bates no. CL 04731)

These documents are protected by work product privilege, EXCEPT the following, which the Defendant shall produce:

CL00518-00519[2] and CL 50542-50543.


Table 1-E: Work Product (subrogation) (starting with Bates no. CL03326)

These documents are all protected by work product doctrine, and the majority also fall

---

[1] CL07765-07770 is identical to CL07120-07125, listed in Table 1-B, above.

[2] Listed in the chart as CL03518-03519, possibly as the result of a typographical error. These pages were not included in the box of documents submitted to the Court.

within attorney-client privilege.

Table 1-F: Work Product (Third-Party Claims) (starting with Bates no. CL046831)

These documents are covered by work product and attorney-client privilege.

Table 1-G:Work Product (starting with Bates no. CL11027)[3]

These are protected by work product and/or attorney-client privilege.

Table 1-G: Work Product (starting with Bates no. CL 37259)

Protected by work product and/or attorney-client privilege.

Table 1-G: Work Product (starting with Bates no. CL 14619)

Protected by work product and/or attorney-client privilege.

Table 1-H: Work Product (starting with Bates no. CL04448)

CL04448-04457, and CL04469-04471 are not protected insofar as the documents contain factual material. Defendant must therefore produce these documents, but may redact those portions containing legal advice and/or opinions.

CL04463, 04468, 50442-50443 and 04465-04466 are protected by work product and/or attorney-client privilege.

Table 1-I: Work Product/ Mental Impression (starting with Bates no. CL05325)

These documents contain not only mental impressions, but legal advice pertaining to ongoing settlement discussions. All documents in this category are protected by work product and/or attorney-client privilege.

---

[3] CL11344, listed in the privilege log, is missing.

Table 1-I: Work Product/Mental Impression (starting with Bates no. CL 14809)

All documents are protected by work product and/or attorney-client privilege.

Table 1-J: Legal Bills (starting with Bates no. CL25115)

These documents pertain to attorneys' bill for claims unrelated to the present case, and contain detailed accounts of the legal services rendered. They are privileged.

Table 1-J: Legal Bills (starting with Bates no. CL11043)

Within this group are legal bills regarding Michigan First's claim. They contain descriptions of services rendered, and are privileged.

Table 1-J: Legal Bills (starting with Bates no. CL 33984)

As above, these are privileged. I note that Bates nos. CL33994-96, listed in the privilege log, are not included. In their place are CL 33984-86. It appears that the discrepancy is the result of a typographical error. In any event, the pages that have been submitted for review are privileged, and include the mental impressions of Louise V. Fish, a subrogation specialist.

Table 1-K: Non-Privileged "Confidential" Material

The state and federal agency reports included here, as well as "suspicious activity" reports and private audits, do not fall within any federally recognized privilege. Defendant argues that they are nonetheless "confidential," but cites no authority supporting their position that they are non-discoverable.

Even to the extent that the documents fall within a state confidentiality provision, they are not shielded from federal discovery, so long as they are relevant to the legal dispute at

issue. However, in recognition of state confidentiality rules, discovery should be accompanied by a protective order limiting the disclosure. Likewise, National Credit Union Administration (NCUA) examination reports are discoverable, subject to a protective order. *See Grand Union Mount Kisco Employees Federal Credit Union v. Kanaryk*, 848 F. Supp. 446, 451 (S.D.N.Y. 1994), citing a portion of NCUA findings in a published opinion on the basis that they were relevant to the case.

Thus, these reports and audits shall be produced to Plaintiff, subject to an "attorneys' and experts' eyes only" protective order, such that, without further order of this Court, they will be disclosed to only the attorneys and expert witnesses directly involved with the prosecution or defense of this lawsuit.

The documents in this section also include settlement agreements and proposed settlement agreements. Bates nos. CL11012-11014, 11016-11022, and 11024-11026 are copies of settlements subject to confidentiality agreements. The public policy favoring confidential settlements outweighs the need for Plaintiff to determine the settlement dollar amount of these other cases. These documents are not discoverable

Bates nos. C 11028-11032 is a proposed settlement agreement to the client from an attorney, and is thus privileged, as are Bates nos. CL 03482-03488.

CL16046-16065, listed in the privilege log, has not been submitted. Therefore, Defendant shall submit these pages to the Court for *in camera* review within 10 days of the date of this order, or waive its claim of privilege.

Table 1-K (Non-Privileged "Confidential" Material (starting with cover page 31 of 32)

As discussed above, these documents are not protected from discovery, but shall be produced subject to the same "attorneys' and experts' eyes only" protective order.

In summary, the order granting Plaintiff's motion to compel discovery of other claims files [Docket #122] is modified and clarified as set forth above. The motion to compel is granted as to the documents described in this Opinion and Order that the Court has found are not protected by work product, attorney-client, or other privilege, and subject to the terms set forth above. The motion is denied as to all other documents set forth in the privilege log and discussed above.

All discovery ordered herein shall be produced within 14 days of the date of this Order.

### III. SANCTIONS

In the order of August 21, 2007, the Court took the present motion [Docket #162] under advisement pending *in camera* review of the documents as to which Defendant claimed privilege, but also ordered that "given Defendant's dilatory actions in providing even the non-privileged documents, thereby necessitating the filing of this Motion, Plaintiff will be awarded reasonable costs and attorney fees associated with pursuing this Motion. Plaintiff shall submit a bill of costs to this Court."

Plaintiff has submitted a bill of costs, in which it requests $7,245.00 in attorney fees, and $54.80 in costs of obtaining the transcript of the May 2, 2007 hearing. Having reviewed the breakdown of attorney time, and having now determined, following *in camera* review, that to a large extent Defendant's claims of privilege are well-supported, the Court finds that

granting Plaintiff the entire requested amount of attorney fees would be unreasonable. Instead, Plaintiff should receive only those fees that would be reasonable associated with filing a motion to compel because of the Defendant's late production of documents as to which no privilege was claimed. This type of discovery motion is, in general, a very routine matter. At most, a reasonably competent attorney would spend no more than two or three hours preparing and drafting such motion, and perhaps a half hour, at most, in court time.

Mr. Blevins, one of Plaintiff's attorneys, bills at $265 per hour, according to the timesheets. Generously allowing three hours for preparation of the motion, and one-half hour to argue, this would result in fees of $927.50. The transcript of the hearing was not reasonably necessary to the motion to compel as to the non-privileged documents.

Therefore, this motion for sanctions [Docket #162] is GRANTED only to the extent that, within 14 days of the date of this Order, attorneys for the Defendant shall pay reasonable attorney fees to the Plaintiff in the amount of $927.50. As to the remaining request for fees and costs, the Motion is DENIED.

SO ORDERED.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 7, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 7, 2007.

                                                         S/Gina Wilson
                                                       Judicial Assistant